NO. 22-13283-A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

HARRY W. TOLLEY, JR.,

Appellant,

v.

MERCER UNIVERSITY,

Appellee.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN OF GEORGIA
ATLANTA DIVISION
CASE NO. 1:20-cv-02453-VMC

**INITIAL BRIEF OF APPELLANT HARRY W. TOLLEY, JR.**

**Thomas J. Mew**
**Georgia Bar No. 503447**
**J. Kyle Brooks**
**Georgia Bar No. 773561**
**BUCKLEY BALA WILSON MEW LLP**
**600 Peachtree Street, NE**
**Suite 3900**
**Atlanta, Georgia 30308**
**(404) 781-1100**

**Counsel for Appellant Harry W. Tolley, Jr.**

Harry W. Tolley, Jr. V. Mercer University
Docket No. 22-13283-A

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1, the undersigned

counsel of record verifies that those persons or entities listed below have or may

have an interest in the outcome of this case:

Brooks, J. Kyle – counsel for Appellant

Bryan, Callie D. - counsel for Appellee

Buckley Bala Wilson Mew LLP – counsel for Appellant

Calvert, Victoria Marie – Judge, United States District Court

Cannon, Regina D. – Magistrate Judge, United States District Court

Hill, Canon B. – counsel for Appellee

Jones Cork, LLP – counsel for Appellee

McDavid, Jr., William B. – counsel for Appellee

Mercer University – Appellee/Defendant

Mew, Thomas J. – counsel for Appellant

Tolley, Harry W. – Appellant/Plaintiff

United Educators Insurance Company – insurer for Appellee

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Counsel for Plaintiff-Appellant Harry Tolley requests oral argument in this case. Counsel believes that oral argument would assist the Court in identifying the numerous instances in which the District Court construed inferences in favor of the non-moving party, requiring reversal so a trial by jury may be had on issues of material fact.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ....................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF CONTENTS............................................................................ ii

TABLE OF CITATIONS .......................................................................... iv

STATEMENT OF JURISDICTION.......................................................... vi

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE....................................................................2

   I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW.................2

   II.    STATEMENT OF FACTS ...................................................................4

      A.    Job posting and Dr. Tolley's Qualifications............................4

      B.    Formation of the Search Committee........................................6

      C.    Conversation with Dr. Allen....................................................7

      D.    Committee Process ..................................................................8

      E.    Faculty Meetings...................................................................12

   III.    STANDARD OF REVIEW...................................................................15

   IV.    SUMMARY OF ARGUMENT ..............................................................17

   V.    ARGUMENT AND CITATIONS OF AUTHORITY ..............................19

A. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE DR. TOLLEY RAISED TRIABLE ISSUES OF FACT CONCERNING THE SEARCH COMMITTEE'S KNOWLEDGE OF HIS RACE ................................................................................................19

B. THE DISTRICT COURT ERRED IN FAILING TO FIND AN ISSUE OF MATERIAL FACT CONCERNING PRETEXT ........................................25

C. THE DISTRICT COURT ERRED IN FAILING TO FIND THAT DR. TOLLEY RAISED TRIABLE FACTS UNDER THE CONVINCING MOSAIC STANDARD ................................................................................31

D. THE DISTRICT COURT ERRED IN FAILING TO FIND THAT DR. TOLLEY RAISED TRIABLE FACTS UNDER A MIXED-MOTIVE STANDARD ................................................................................................33

VI. CONCLUSION ........................................................................34

CERTIFICATE OF COMPLIANCE ....................................................36

CERTIFICATE OF SERVICE .............................................................37

# TABLE OF CITATIONS

Page

**Cases**

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) ....................................15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................16, 20

*Bass v. Bd. of County Com'rs, Orange Cnty., Fla.,* 256 F.3d 1095 (11th Cir. 2001)................................................................................................26, 34

*Berbridge v. Sam's E., Inc.*, 728 F. App'x 929 (11th Cir. 2018) ) .............22, 23, 24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................15, 21, 31, 35

*City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702 (1978) ................................................................................................................30

*Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189 (11th Cir. 2004)........29

*Connecticut v. Teal*, 457 U.S. 440 (1982) .................................................................30

*Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008)................................................34

*Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321 (11th Cir. 1982) .................22

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993) .............................15, 16

*Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305 (11th Cir. 2001)...................4

*Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316 (11th Cir. 2012)...16, 17

*Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238 (11th Cir. 2004) .................21, 31

*Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286 (11th Cir. 2006)................................................................................................26

*Jaffke v. Dunham*, 352 U.S. 280 (1957)....................................................................25

*Jenkins v. Nell*, 26 F.4th 1243 (11th Cir. 2022)................................................20, 32

*Jones v. Dillard's, Inc.*, 331 F.3d 1259 (11th Cir. 2003)........................................15

*Keaton v. Cobb Cnty.*, 545 F.Supp.2d 1275 (N.D. Ga. 2008) ................................26

*Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004)...........................16, 34

iv

*Lewis v. City of Union City, Ga.*, 934 F.3d 1169 (2019) ........................................32

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ..............................................................16

*Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016).......................33

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ..................16, 25

*Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x. 529 (11th Cir. 2019)........33

*Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729 (7th Cir. 2011)................32

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 20112011) .....26, 31, 32

*Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012)..........................20

*Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir. 1986) ......................................35

*Vessels v. Atlanta Independent Sch. Sys.*, 408 F.3d 763 (11th Cir. 2005)..............30

*Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270
(11th Cir. 2002)......................................................................................................26

*Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir. 1998).............................25

**Federal Statutes**

28 U.S.C. § 1291 ..................................................................................................iv

28 U.S.C. § 1331 ..................................................................................................iv

28 U.S.C. § 1343 ..................................................................................................iv

42 U.S.C. § 1981 .............................................................................................2, 20

42 U.S.C. § 2000e ...............................................................................................15

29 CFR § 1602.13 ...............................................................................................28

Fed. R. Civ. P. 56 ...............................................................................................15

## <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final decision of the United States District Court for the Northern District of Georgia that disposes of all of the parties' claims. The District Court had federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under 28 U.S.C. § 1343. Appellant timely appealed from the District Court's August 25, 2022, Order granting Appellee's Motion for Summary Judgment, (Doc. 85), and August 25, 2022, Judgment dismissing the case, (Doc. 86), by filing a Notice of Appeal on September 26, 2022. (Doc. 87.)

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in declining to find an issue of material fact concerning the search committee's knowledge of Appellant's race despite evidence that (1) a faculty member with whom Appellant had a familial relationship spoke to a search committee member, told him that he had spoken to Appellant, probably mentioned his familial relationship with Appellant, and asked if the committee had received Appellant's application; and (2) the search committee made its decisions collectively after discussing the candidates.

2.  Whether the District Court erred in declining to find an issue of material fact concerning pretext despite evidence that (1) a faculty member with whom Appellant had a familial relationship told Appellant in part that that being a person of color was an advantage in the search and that "we feel we owe it to our students to hire another African American professor"; (2) the search committee made numerous statements concerning candidates' races; (3) notes from faculty discussions of the candidates contain numerous references to the final candidates' races; (4) the application materials the search committee members reviewed, including the application of the candidate ultimately hired, contain numerous references to the applicants' demographic information, even in their redacted form; (5) members of the search committee

1

destroyed their notes concerning the candidate search process, in violation of Appellee's document retention policy; and (6) Appellee offered shifting reasons for its decision.

3. Whether the District Court erred in failing to analyze the record as a whole with respect to evidence of pretext and failed to draw factual inferences in the light most favorable to the nonmovant.

4. Whether the District Court erred in failing to determine that Appellant presented ample evidence showing the existence of a genuine dispute of material fact regarding race discrimination under the "convincing mosaic" standard.

5. Whether the District Court erred in failing to determine that a reasonable jury could conclude that Appellant's race was a motivating factor in Appellee's employment decision.

## <u>STATEMENT OF THE CASE</u>

## I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Dr. Harry W. Tolley, Jr. ("Dr. Tolley," or "Appellant") filed this case in the United States District Court for the Northern District of Georgia on June 8, 2020, alleging claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. (Doc. 1.)

On January 7, 2022, Mercer University ("Mercer" or "Appellee") moved for summary judgment. (Doc. 54.) Dr. Tolley responded to that motion, and Mercer filed a reply.[1] (Docs. 60, 62, 67, 68, 74, 75, and 76.) On April 1, 2022, Dr. Tolley filed a motion asking the District Court to disregard arguments raised for the first time in Mercer's reply or, alternatively, for leave to file a sur-reply brief and re-open discovery to address the new arguments. (Doc. 70.) The District Court granted this motion, in part, and permitted Dr. Tolley to submit a supplemental brief addressing two discrete issues. (Doc. 73 at 4-5.) Dr. Tolley submitted his sur-reply, addressing those issues, on June 27, 2022. (Doc. 77.)

On July 13, 2022, a Magistrate Judge entered a Final Report and Recommendation, recommending that Mercer's summary judgment motion be granted. (Doc. 78.) After obtaining an extension of time to do so, Dr. Tolley timely objected to the Magistrate Judge's Final Report and Recommendation on August 3, 2022. (Docs. 81, 82.)  Mercer filed a response to Dr. Tolley's objection, and Dr.

---

[1] Dr. Tolley's response and Mercer's reply were initially and provisionally filed under seal, and each party filed redacted, publicly available copies of those materials, as well as related motions to file under seal. (Docs. 60, 61, 62, 67, 68, 69.) The District Court denied the parties' motions to file under seal and ordered the parties to re-file their summary judgment materials without provisional seal or redaction. (Doc. 73 at 1-4.) Thereafter, the parties complied with the District Court's Order. On June 16, 2022, Dr. Tolley re-filed his summary judgment response and related materials (Doc. 74), and Mercer re-filed its reply and related materials (Docs. 75 & 76).

3

Tolley sought leave to file a reply to Mercer's response, which was not granted. (Docs. 83, 84.) On August 25, 2022, the District Court granted summary judgment to Mercer on all claims, and judgment was entered judgment in its favor. (Docs. 85 & 86.) Dr. Tolley timely filed a Notice of Appeal. (Doc. 87.)

## II.    STATEMENT OF FACTS[2]

### A.    Job posting and Dr. Tolley's qualifications

On October 18, 2018, Dr. Tolley applied for an open Professor of New Testament Studies position at Mercer's McAfee School of Theology ("McAfee"). (Doc. 1, ¶18; Doc. 54-5[3] at 49:20-22, 50:21-25, 51:1-5; Doc. 63-1 at 8-19.) The job posting for the position stated that "Candidates must have a PhD in New Testament, Biblical Studies, or a related field from an accredited college/university by June 2019." (Doc. 54-4, ¶8 & Ex. 2.) The posting also stated, "Desirable qualities in a candidate include:

- a strong commitment to the church and bridging the gap between the academy and the church

---

[2] Some of these facts are disputed by Mercer, but this Court reviews an order granting summary judgment *de novo*, "viewing all the facts in the record in the light most favorable to the non-moving party, and drawing all inferences in his favor." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001) (citation omitted).

[3] Deposition transcript citations in the brief correspond to the deposition page number, not the ECF page number, unless otherwise specifically noted.

- a keen attentiveness to issues pertaining to gender, race, and cultural diversity,

- a robust research and publication agenda

- online teaching experience."

(*Id.*)

Dr. Tolley is a white male. (Doc. 54-5 at 97:9.) Dr. Tolley holds a Bachelor's degree in Religious Studies from the University of North Carolina at Charlotte, a Master's degree in Christian Origins from the University of Georgia, and a Ph.D. from the Department of Religious Studies, University of Pennsylvania. (Doc. 63-1 at 8-12.) Dr. Tolley's primary doctoral field of specialization is in Christian Origins/New Testament. (*Id.*) Dr. Tolley's work has been published in several academic publications, including the *Harvard Theological Review*. (*Id.*) Dr. Tolley has also performed translating and editing work for various publications and projects. (*Id.*) Dr. Tolley has made numerous presentations at various scholarly events, including the Society of Biblical Literature. (*Id.*) Dr. Tolley has held teaching positions at The University of Pennsylvania, Appalachian State University, the University of Georgia, Perimeter College at Georgia State University, and the former Georgia Perimeter College. (*Id.*)

The job opening for the Professor of New Testament Studies position was created due to the retirement of Dr. Tom Slater, who is African-American. (Doc. 54-

5

10 at 45:15-24.) Dr. Tolley was qualified for the New Testament Studies position by virtue of his education and experience and per Defendant's own designation. (Doc. 54-4, ¶18 & Ex. 3.) Dr. Angela Parker ("Dr. Parker"), an African-American female, was ultimately selected for the position. (Doc. 54-6 at 89:2-16.)

### B.    Formation of the Search Committee

Mercer formed a search committee to select a candidate for the open position. Dr. C. Gregory DeLoach, III ("DeLoach"), who at the time was McAfee's Interim Dean, served on the search committee in a role he described as "ex officio;" he testified that he had "a voice and an input and suggestion and so forth" in the search committee but did not have a vote. (Doc. 54-6 at 23:11-25, 24:10-13.) Dean DeLoach attended "95 percent" of the search committee meetings, if not all of them. (Doc. 54-6 at 46:2-7.) The three other individuals DeLoach appointed to the search committee were McAfee professors Dr. Karen Massey, Dr. David Garber, and Dr. Nancy deClaisse-Walford. (Doc. 54-6 at 25:12-17.)

The search committee sent the qualifications and requirements for the position to Mercer's Human Resources department. (Doc. 54-4, ¶¶6-7.) Human Resources posted the job on Mercer's website on September 20, 2018, and subsequently collected the candidates' application materials. (Doc. 54-4, ¶¶9-10.)

### C.    Conversation with Dr. Allen

Dr. Loyd Allen is a professor at McAfee. (Doc. 54-10 at 9:17-25.) Dr. Tolley's spouse and Dr. Allen are distantly related, and Dr. Allen spoke with Dr. Tolley about the open Professor of New Testament Studies position. (Doc. 54-10 at 18:19 – 20:17.) On or about November 16, 2018, Dr. Tolley and Dr. Allen discussed the position by telephone. (Doc. 54-10 at 15:22-25, 18:12-15.) In the conversation, Dr. Allen stated that he assumed that Dr. Tolley was a white male and that both being female and a person of color was an advantage in the search. (Doc. 54-5 at 70:19-22, 71:1-6; Doc. 63-1 at 21.) Dr. Allen told Dr. Tolley that an individual named Chris, a white male who taught at McAfee as a contract professor, did not get hired and that everyone who was hired was a female or person of color. (Doc. 54-5 at 71:7-19; Doc. 63-1 at 21.) Dr. Allen told Dr. Tolley that the student body at McAfee was roughly 50 percent African-American and that "the racial body of the faculty at McAfee is going to have to change to better reflect the racial makeup of our student body." (Doc. 54-5 at 142:24 – 144:12; Doc. 63-1 at 21.) Dr. Allen told Dr. Tolley that "we feel that we owe it to our students to hire another African American professor to take [Dr. Slater's] place." (Doc. 54-5 at 142:24 – 144:12; Doc. 63-1 at 22-23.) After his call with Dr. Tolley, Allen spoke to search committee member David Garber, told him he had spoken to Dr. Tolley, probably mentioned to Garber his familial relationship with Dr. Tolley, and asked if the search committee had

received Dr. Tolley's application. (Doc. 54-10 at 31:21 – 32:18; 51:17-22.) Dr. Allen is a white male. (Doc. 63-5 at 5-6 (Response to Interrogatory No. 5).)

### D.    Committee Process

The accrediting agency for McAfee, the Association of Theological Schools ("ATS"), had urged McAfee in any new searches for faculty or staff positions to add greater diversity to the faculty and staff. (Doc. 54-8 at 69:13-19.) The New Testament Studies position was the first opening that had arisen since that report was issued. (Doc. 54-8 at 70:23-71:2.)

Mercer's Human Resources department received a total of 109 applications for the position, including Dr. Tolley's application. (Doc. 54-4, ¶¶13, 16.) The search committee was provided with the application materials in an electronic format via the mercer.pageuppeople.com online application ("PageUp"). (Doc. 54-4, ¶14.) While the PageUp application purportedly did not permit members of the search committee to view candidates' demographic information (Doc. 54-4, ¶19), members of the search committee had access to each candidate's curriculum vitae or resume, cover letter, references, and statement of teaching philosophy when reviewing the applications submitted by all persons who applied for the position. (Doc. 54-8 at 29:7-24; Doc. 54-6 at 42:12-17; Doc. 54-7 at 32:20 – 33:10.)

Even in their redacted form, the application materials the search committee members reviewed contain numerous references to various applicants' demographic

information. (Exh. 18 to Doc. 54-8 at MU 0032 (stating that the applicant is a lesbian), MU 0151 (listing an applicant's membership in the Association of Latina United Methodist Clergy Women), MU 0251 (another candidate's cover letter, stating that the candidate was "a racial/ethnic minority"), MU 0356 (candidate described themselves in part as "white").[4]

When he applied for the position, Dr. Tolley provided his demographic information to Mercer, insofar as he selected "yes" to the application materials' question "Are you of Hispanic or Latino origin?" (Doc. 54-4, ¶17.)

Dr. Parker's application materials, as provided to the search committee, include her statement of teaching philosophy in which she states that she is "aware of my visible difference in predominantly white institutions" and that that "womanist interpretation in New Testament studies is my main area of specialty" (Exhibit 18 to Doc. 54-8 at MU 0277.)[5] Each member of the search committee confirmed that "womanist" or "womanism" is generally understood to refer to interpretation of Biblical texts from the perspective of a Black/African-American woman or feminist. (Doc. 54-8 at 76:18 – 78:1; Doc. 54-6 at 83:10-13, 83:23 – 84:1; Doc. 54-9 at 75:16 – 76:5; Doc. 54-7 at 56:22 – 57:2.)

---

[4] The ECF citation for these materials is Doc. 54-8 at 110, 148, 181, and 240.
[5] The ECF citation for Dr. Parker's statement of teaching philosophy is Doc. 54-8 at 197-198.

After reviewing the application materials from the 109 candidates, the search committee selected a list of fourteen candidates to be interviewed. (Doc. 54-8 at 31:9-14; Doc. 54-4, ¶¶23-24.) Dr. Tolley was not selected as a candidate to be interviewed. (Ex. 5 to Doc. 54-4.) The search committee was concerned with and discussed the race of applicants when evaluating the initial pool of 109 applicants. This was so, at least in part, because ATS had emphasized the need for McAfee to hire a more racially diverse faculty, and the position was the first faculty opening that had occurred since the accrediting agency's report was issued. (Doc. 54-8 at 69:13-19, 70:2 – 72:3; Doc. 54-9 at 88:4 – 89:15; Doc. 54-7 at 68:24 – 69:3.) Moreover, one member of the search committee confirmed that a particular candidate's cultural or racial background would bear on whether they had the necessary "keen attentiveness to issues pertaining to gender, race, and cultural diversity" that was made a qualification for the position. (Doc. 54-7 at 25:25 – 26:6; Doc. 54-4 at 14 (listing "a keen attentiveness to issues pertaining to gender, race, and cultural diversity" as a qualification for the position).) Further, evidence adduced in discovery shows that race was an active factor in the discussion. Dr. deClaisse-Walford stated of a candidate that she had seen his application and liked him very much but "he is a white male…sigh!" (Doc. 74-3 at 13-14 (MU 1857-58).) Dean DeLoach responded to an email from a faculty member by stating in part "we are searching to fill a NT faculty position…all things being equal a person of color

10

would be preferred," that only one candidate up for consideration was African American and that although "the committee has her at the top of our list, out [sic] two student reps (one Hispanic and one African-American) did not have her at the top of the list. Further complicating this is that we have had two student 'petitions' to hire Chris Holmes with several African-American students signing the petition." (Doc. 74-3 at 31(MU2313).)

Following a larger group of in-person interviews in Denver and via Skype in November 2018, three candidates, including Dr. Parker and Dr. Chris Holmes, were brought to McAfee's campus to give lectures and meet with faculty and students. (Doc. 54-8 at 53:8 – 55:18, 48:11 – 49:3, 38:2; Doc. 54-6 at 50:12-51:16.) Dr. Holmes is a white male. (Doc. 54-6 at 69:1-2.)

Dr. deClaisse-Walford testified that no one on the faculty made any recommendations to the search committee about candidates. (Doc. 54-8 at 83:2-13.) Dr. Garber testified, however, that faculty member David Gushee sent the committee an email about a candidate and that Dr. Allen mentioned another candidate at one point. (Doc. 54-9 at 59:24 – 60:6.)

Before deClaisse-Walford reviewed Parker's application, she was not familiar with anyone having a Ph.D. in Bible, Culture & Hermeneutics. (Doc. 54-8 at 80:24-81:2.) In an email exchange from November 21, 2018, deClaisse-Walford and Garber shared their top six candidates, none of whom included Dr. Holmes. (Doc.

74-3 at 15-20 (MU2111-2116).) In an email thread discussing the candidates to be interviewed, Dr. Bowden and Dr. Parker were included along with two other candidates but not Dr. Holmes. (Doc. 74-3 at 23-28 (MU2199-2204).)

### E.     Faculty Meetings

Following the lectures, the professors of McAfee met collectively to discuss the three candidates who were brought to campus to provide lectures. (Doc. 54-8 at 62:2-21; Doc. 54-6 at 70:17 – 72:17, 77:22 – 79:25; Doc. 54-9 at 61:4-23, 65:11-24, 66:15 – 67:14; Doc. 54-7 at 57:21 – 58:25, 63:4-15, 66:2-9.) The faculty discussed the three candidates, but the search committee brought the final two – Dr. Holmes and Dr. Parker – to the faculty for a vote. (Doc. 54-8 at 62:2-13; 9-21.) Two student representatives who gave input to the search committee did not rank Dr. Parker as their first selection and expressed concerns about the narrowness of her academic focus. (Doc. 74-3 at 21-22 (MU2164-65).)

The faculty members then held a vote by secret ballot to determine whether the faculty collectively favored Dr. Holmes or Dr. Parker for the position. (Doc. 54-8 at 62:2-21; Doc. 54-6 at 70:17 – 72:17, 77:22 – 79:25; Doc. 54-9 at 61:4-23, 65:11-24, 66:15 – 67:14; Doc. 54-7 at 57:21 – 58:25, 63:4-15, 66:2-9.) Between the two candidates, Walford and Massey voted for Holmes. (Doc. 54-8 at 65:7-12; Doc. 54-7 at 66:20-22.) Dr. Parker won this vote. (Doc. 54-8 at 62:2-21; Doc. 54-6 at 70:17

12

– 72:17, 77:22 – 79:25; Doc. 54-9 at 61:4-23, 65:11-24, 66:15 – 67:14; Doc. 54-7 at 57:21 – 58:25, 63:4-15, 66:2-9.)

During the general faculty discussion that preceded the vote, there was discussion about the accreditation agency and its report about increasing diversity and conversation about the makeup of the student body and faculty. (Doc. 54-9 at 64:5-23). Dr. Massey testified that the race of a candidate had bearing as to qualification for the job. (Doc. 54-7 at 25:23 – 26:6.) Dean DeLoach's notes from the faculty discussions of the candidates contain numerous references to race. (Doc. 74-3 at 8-10 (MU804-806).) For example, in discussing Dr. Parker, Dr. Allen specifically mentioned that she was African American. (Doc. 74-3 at 8 (MU804).) Dr. Slater stated that Dr. Parker and African American faculty member Chanequa Walker-Barnes would be good complements. (Doc. 74-3 at 8 (MU804).) Dr. Allen further stated that Dr. Parker's "race is a plus." (Doc. 74-3 at 8 (MU804).) Dr. Slater noted that Dr. Parker "could help us connect with black churches." (Doc. 74-3 at 8 (MU804).) With respect to Dr. Holmes, Allen stated that he was "embodiment of white may be problematic." (Doc. 74-3 at 9 (MU805).) Another faculty member stated in discussing Dr. Holmes "need more diversity." (Doc. 74-3 at 9 (MU805).)

Following the faculty vote, the search committee deferred to the vote of the faculty and recommended to Dean DeLoach that McAfee hire Dr. Parker, an African-American female. (Doc. 54-9 at 67:15 – 70:9; Doc. 54-7 at 66:10-14, 69:6

– 70:18; Doc. 54-6 at 89:2-16.) Dean DeLoach thereafter conveyed the recommendation to the University Provost. (Doc. 54-6 at 90:4-25; Doc. 54-3, ¶4.) The Provost then presented the recommendation to Mercer's President, William Underwood. *Id*. A formal offer of the position was made from the President's office to Dr. Parker. *Id*. Neither the President nor the Provost to whom Dean DeLoach advanced the selected candidate did any questioning or further review of the candidate. (Doc. 54-6 at 89:24 – 90:16.)

Defendant had a document retention policy, which required that all job search related materials not housed on Defendant's "online site (i.e., interview notes, reference checks, etc.) **MUST** be maintained in your office for **three (3)** years from the date of hire." (Doc. 74-4 at 33:21 – 38:1; Ex. 40 to Doc. 74-4 at MU1584.[6]) Defendant did not circulate a litigation hold letter concerning Dr. Tolley and the New Testament Studies position until June 3, 2020. (Doc. 74-4 at 48:8 – 49:17; Ex. 37 to Doc. 74-4.[7]) Dr. deClaisse-Walford took handwritten notes during search committee meetings but destroyed her notes in or around May 2020. (Doc. 54-8 at 36:24-38:18.) Dr. Massey put her notes about the candidates through a shredder sometime after Dr. Parker was offered the position. (Doc. 54-7 at 34:9 – 36:19.)

---

[6] The ECF cite for this document is Doc. 74-4, p. 101.
[7] The ECF cite for this document is Doc. 74-4, pp. 86-88.

## III.   STANDARD OF REVIEW

This Court reviews a district court's summary judgment decision *de novo.* *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1262 (11th Cir. 2003). Summary judgment is appropriate only when no genuine issue of material fact exists and the defendant, as moving party, is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party moving for summary judgment bears the initial burden of demonstrating the absence of any issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). As to issues on which the non-moving party bears the burden of proof at trial, the non-moving party may avoid summary judgment if she can show that the record "in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored by the moving party,' … [or] may come forward with additional evidence sufficient to withstand a directed verdict motion at trial[.]"  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir. 1993).

Though the Court should review the record as a whole, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). It must "view the evidence *and all factual inferences therefrom* in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the

non-movant." *Kingsland v. City of Miami*, 382 F.3d 1220, 1225–26 (11th Cir. 2004) (citation omitted)(emphasis added), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). Summary judgment is improper if there is any genuine issue of material fact, even one created by a party's testimony. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1321 (11th Cir. 2012).

## IV.    SUMMARY OF ARGUMENT

The District Court erred in granting summary judgment to Mercer on Dr. Tolley's claims for discrimination.  First, the District Court erroneously determined that Dr. Tolley failed to raise a triable issue of fact concerning the search committee members' knowledge of his race. In reaching its decision on this issue, the District Court failed to draw all reasonable inferences in the Dr. Tolley's favor, including evidence concerning a conversation between a white male relative of Dr. Tolley and a member of the search committee, collective conversations about candidates and discussions of race between search committee members, and the surrounding circumstances of the hiring process, notably the degree to which race was at the center of the selection process.

Second, the District Court erred when it failed to determine, based on its erroneous determination that the search committee members did not know Dr. Tolley's race at the time they eliminated him from the search process, that Dr. Tolley raised triable issues of fact concerning pretext. Dr. Tolley raised triable issues of fact on pretext based on evidence of search committee members' race based discussions, Mercer's deviation from its regular procedures during the hiring process, Mercer's injection of race throughout the hiring process, and Mercer's shifting reasons for not hiring Dr. Tolley.

Third, the District Court erred when it failed to consider, based on its erroneous determination that the search committee members did not know Dr. Tolley's race at the time they eliminated him from the search process, that Dr. Tolley raised triable issues of fact under a convincing mosaic standard. Dr. Tolley presented evidence that the search committee discussed race with respect to the suitability of candidates, and that Dr. deClaise-Walford, Dean Deloach, and faculty members made specific comments directed to candidates' race and suitability.

Finally, the District Court erred when it failed to consider, based on its erroneous determination that the search committee members did not know Dr. Tolley's race at the time they eliminated him from the search process, Dr. Tolley's mixed-motive claim. Dr. Tolley raised triable issues of fact under a single-motive standard. But even assuming, for purposes of argument, that he did not, he raised

triable issues of fact under a mixed-motive standard where he offered evidence that he was subjected to an adverse action (not hired) and offered evidence concerning the search committee's awareness of his race and the race-based remarks and motivations of the committee and Dean Deloach. A reasonable jury could conclude that Dr. Tolley's race was a motivating factor in Mercer's employment decision. For all of these reasons, this Court should reverse the District Court's order granting summary judgment to Mercer.

## V.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE DR. TOLLEY RAISED TRIABLE ISSUES OF FACT CONCERNING THE SEARCH COMMITTEE'S KNOWLEDGE OF HIS RACE

The District Court, adopting the Magistrate Judge's incorrect determination, erroneously concluded that the search committee members' declarations disclaiming knowledge of Dr. Tolley's race at the time that they rejected his application, "alone [are] enough to doom [Plaintiff's] claims." (Doc. 85 at 5.) In reaching this conclusion, the District Court erred in failing to construe factual inferences in favor of Dr. Tolley, failed to properly consider the countervailing evidence submitted by Dr. Tolley on this issue and erroneously determined that there was no genuine, material dispute of fact as to the question of whether Mercer's committee members had knowledge of his race. (*Id*. at 4–5.)

First, Dr. Tolley presented evidence beyond mere speculation concerning Dr. Garber's knowledge of his race. Based on Dr. Allen's testimony, it is a reasonable inference that Dr. Allen, a white male, told Dr. Garber of his familial relationship to Dr. Tolley and that Dr. Garber would conclude from this statement that Dr. Tolley is also white. Indeed, Dr. Allen himself made the same conclusion when he first spoke with his relative Dr. Tolley by telephone, stating he assumed that Dr. Tolley was a white male. (Doc. 54-5, 70:19–22; 71:1–6; Doc. 63-1, Ex. 8.) This is not simply a guess or a mere possibility without evidentiary support. Based on the evidence presented by Dr. Tolley, it is a reasonable inference, which the Court must draw in Dr. Tolley's favor, that Dr. Garber's believed or understood that Dr. Tolley was white. A jury must resolve this issue, not the District Court on summary judgment. S*trickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson*, 477 U.S. at 255). This Court should reverse the District Court's order. *Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022) ("When a plaintiff who alleges a racial discrimination claim under Section 1981 or Title VII presents factual and credibility disputes which require a jury to resolve and would allow a jury to infer intentional discrimination summary judgment is improper" (internal quotation omitted.))

19

Second, the District Court erroneously dismissed as speculative Dr. Tolley's evidence concerning the search committee's knowledge of his race. In doing so, the District Court failed to properly consider the evidence submitted by Dr. Tolley on this issue and the record as a whole and to draw reasonable factual inferences in his favor. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1243 (11th Cir. 2004); *Celotex Corp.*, 477 U.S. at 322–23 (in deciding summary judgment, the court is to make findings based on the record as a whole, as opposed to isolated testimony or evidence and must also draw factual inferences in the light most favorable to the nonmovant.)

The search committee made its decision on narrowing down the initial applicant pool collectively after discussing the candidates. ((Doc. 54-7 at 34; Doc. 54-8 at 30–32; Doc. 54-9 at 33–35.) Additionally, the members of the search committee and Dean Deloach clearly discussed race with respect to the suitability of candidates. The search committee discussed that the accrediting agency reminded them to pay attention to racial and gender diversity and that Dr. Parker would provide this. (Doc. 54-7, 68:24–69:5.) In a November 1, 2018 email, committee member Dr. deClaisse-Walford stated of a candidate that she had seen his application and liked him very much but "he is a white male…sigh!" (Doc. 74-3, Ex1. at MU1857.) Dean DeLoach responded to an email from a faculty member by stating in part "we

20

are searching to fill a NT faculty position…all things being equal a person of color would be preferred." (*Id.* at MU2313.) In the same email, DeLoach stated that of the remaining applicants, only one was African American and that although "the committee has her at the top of our list, out [sic] two student reps (one Hispanic and one African-American) did not have her at the top of the list. Further complicating this is that we have had two student 'petitions' to hire [white male] Chris Holmes with several African-American students signing the petition." (*Id.*) Dr. Massey testified that the race of a candidate had bearing as to qualification for the job. (Doc. 54-7 at 25:23 – 26:6.)

This evidence concerning discussions of race by and among the committee members further supports the inference that Dr. Garber shared his knowledge or belief concerning Dr. Tolley's race with the other search committee members. The District Court erred in dismissing this inference as merely speculative. Dr. Tolley is not required to prove this fact at summary judgment; he must simply raise a triable issue of fact. Reasonable inferences "may rest in part on conjecture, for an inference by definition is at least partially conjectural." *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) (citing *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982)) (citations and punctuation omitted). Moreover, as discussed further in Part IV. B., *infra*, members of the search committee destroyed their notes concerning the candidate search process, in violation of Mercer's and the

21

EEOC's document retention policies, thus depriving Dr. Tolley of discovery on their contemporaneous notes of discussions. Here, Dr. Tolley raised triable issues of fact beyond mere speculation. The District Court erred in construing factual inferences against him.

Moreover, Dr. Tolley cited evidence concerning the surrounding circumstances, notably the degree to which race was at the center of the selection process, which further supports an inference in his favor on summary judgment. Dr. Allen told Dr. Tolley (1) that being female and a person of color was an advantage in the search (Doc. 54-5, 71:1–6; Doc. 63-1 Ex. 8); (2) that a white male who taught at McAfee as a contract professor did not get hired and that everyone who was hired was a female or person of color (Doc. 54-5, 71:7–19; Doc. 63-1 Ex. 8); (3) that "the racial body of the faculty at McAfee is going to have to change to better reflect the racial makeup of our student body" (Doc. 63-1 Ex. 8); and (4) that "we feel that we owe it to our students to hire another African American professor to take [Dr. Slater's] place" (Doc. 63-1 Ex. 9).  This evidence bolsters the inference that the search committee had knowledge of Dr. Tolley's race and that there are triable issues of fact on this issue.  *Cf. Berbridge*, 728 F. App'x at 933 (comparing slip and fall cases on summary judgment, stating that the common issue of notice in both cases could not "be viewed in isolation from the surrounding circumstances" and distinguishing the case at hand from the other cited case because there was "no

similar evidence of the surrounding circumstances that could support an inference" on the disputed legal issue).[8]

Further, Dean DeLoach's notes from faculty discussions of the candidates contain numerous references to the final candidates' race. (Doc. 74-3 Ex. 1 at MU804–06.)  In discussing Dr. Parker, Dr. Allen specifically mentioned that she was African American.  (*Id.* at MU804.) Dr. Allen further stated that Dr. Parker's "race is a plus." (*Id.*)  With respect to Dr. Holmes, Allen stated that he was "embodiment of white may be problematic." (*Id.* at MU805.)  Another faculty member stated in discussing Dr. Holmes "need more diversity."  (*Id.*)

Based on this evidence of record, it is a reasonable inference, which the Court must draw in Dr. Tolley's favor, that Dr. Garber's belief that Dr. Tolley was white was shared with the other Committee members and that the members had knowledge of or belief concerning Dr. Tolley's race as white. This Court should reverse the District Court's order.

---

[8] Dr. Tolley is not arguing constructive knowledge in this discrimination case but rather cites to *Berbridge* as an example of when surrounding circumstances may further support a factual inference being drawn in favor of the non-movant.

**B.    THE DISTRICT COURT ERRED IN FAILING TO FIND AN ISSUE OF MATERIAL FACT CONCERNING PRETEXT**

The District Court did not consider Dr. Tolley's arguments concerning pretext based on its erroneous determination that the search committee members did not know Dr. Tolley's race at the time they eliminated him from the search process. (Doc. 85 at 5.) The District Court therefore compounded its error because Dr. Tolley raised triable issues of fact on pretext.[9]

A plaintiff may demonstrate pretext either directly, by showing that a discriminatory or retaliatory reason more than likely motivated the employer, or indirectly, by showing that the proffered reason for the decision is not worthy of belief. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1998). A plaintiff may also rely upon all of the evidence as part of his prima face case to show the defendant's true discriminatory and retaliatory animus. *Reeves*, 530 U.S. at 143. In this case, there is abundant evidence of pretext.

First, the race based discussions and circumstances cited in Section III.A, *supra*, are evidence of pretext and raise triable issues of fact concerning Mercer's discriminatory animus. Based on this evidence, a jury could conclude that the issue

---

[9] This Court may affirm the District Court "on any ground that finds support in the record." *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957). Dr. Tolley raised the remaining issues in this brief before the District Court and discusses them here to show there were triable issues of fact on these issues as well. Thus, the District Court's decision was erroneous under all of these issues.

of race was injected into Mercer's decision-making process from the outset and that Dr. Tolley's application was rejected, at least in part, because of his race. Where, as here, an employer injects race into its decision-making process, it "yields an unavoidable inference that the employee's race impacted the [employment decision], and it is a jury's province to decide whether race actually bore on the [employment decision]." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1346 (11th Cir. 2011).

Dr. Tolley also at least raised triable issues of fact that Mercer deviated from its regular procedures during the hiring process. An employer's deviation from its own standard procedures may serve as evidence of pretext. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (citing *Bass v. Bd. of County Com'rs, Orange Cnty., Fla.,* 256 F.3d 1095, 1108 (11th Cir. 2001)); *see also Keaton v. Cobb Cnty.*, 545 F.Supp.2d 1275, 1292 (N.D. Ga. 2008) (quoting *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1279 (11th Cir. 2002) ("The bending of established rules may, of course, be suggestive of discrimination.")).

Dr. Tolley presented evidence demonstrating that the application materials the search committee members reviewed, including the application of Dr. Parker (who was ultimately hired), contain numerous references to the applicants' demographic information, even in their redacted form as provided to the search committee. One

candidate's cover letter stated that the candidate was "a racial/ethnic minority." (Doc. 54-8 Ex. 18 at MU251.) Another candidate's materials identify membership in the Pacific, Asian, and North American Asian Women in Theology and Ministry. (*Id.* at MU266.) Another candidate identified in part "my contextual location as a Euro American" and identified as "white." (*Id*. at MU353, 356.)

Dr. Parker's application materials, even as redacted and provided to the search committee, include her statement of teaching philosophy in which she states that she is "aware of my visible difference in predominantly white institutions." (*Id.* at MU275.) Dr. Parker also states in her application materials that "womanist interpretation in New Testament studies is my main area of specialty." (*Id.* at MU277.) During their depositions, each member of the search committee confirmed that "womanist" or "womanism" is generally understood to refer to interpretation of Biblical texts from the perspective of a Black/African-American woman or feminist. (Doc. 54-8 at 76:18–78:1; Doc. 54-6 at 83:10–13, 83:23–84:1; Doc. 54-9 at 75:16–76:5; Doc. 54-7 at 56:22–57:2.)

If the applications presented were supposed to be neutral in terms of demographic content, they clearly were not, which further raises triable issues of fact on pretext. The prevalence of such demographic information in the application process and before the search committee raises issues of pretext with respect to Mercer's claims of a neutral and unbiased search process.

26

Additionally, Dr. Tolley presented evidence that members of the search committee destroyed their notes concerning the candidate search process, in violation of Mercer's document retention policy. Mercer had a document retention policy, which required that all job search related materials not housed on Mercer's "online site (i.e., interview notes, reference checks, etc.) MUST be maintained in your office for three (3) years from the date of hire." (Doc. 62-4 Ex. 40 at MU1584.) Dr. deClaisse-Walford took handwritten notes during search committee meetings but destroyed her notes in or around May 2020. (Doc 54-8 at 36:24–38:18.)  Dr. Massey put her notes about the candidates through a shredder sometime after Dr. Parker was offered the position. (Doc. 54-7 at 34:9–36:19)) Thus, both deClaisse-Walford and Massey violated Mercer's own policy. Mercer did not even circulate a litigation hold letter until June 3, 2020, despite the fact that Dr. Tolley filed his EEOC charge in September 2019. (Doc. 74-4 at 48:8–49:17, Ex. 37; Doc. 54-5, Ex. 2.); *see also* 29 CFR § 1602.13 ("Where a charge of discrimination has been filed . . . against an employer under title [sic] VII, the ADA, or GINA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.")  The Magistrate Judge stated that Dr. Walford and Dr. Massey testified that they destroyed their notes concerning the candidate search for "non-nefarious reasons." (Doc. 78 at 26.) However, based on the evidence that the Committee received racial information concerning the

candidates in deviation from Mercer's stated normal practice, the numerous comments made by members of the faculty concerning candidates' races, and Mercer's own failure to timely circulate a litigation hold notice, a reasonable jury could discredit Dr. Walford's and Dr. Massey's testimony concerning the reasons that they destroyed their notes. Their actions prevented Dr. Tolley from discovering their contemporaneous notes and what they may have reflected. This raises further triable issues on pretext.

Dr. Tolley also argued below that Mercer's after the fact reasons for allegedly not selecting him are evidence of pretext. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004) (finding that an employer offering shifting reasons allowed a jury to question the decision maker's credibility and precluded summary judgment). For example, Mercer claimed Dr. Tolley's publications were focused on history and not New Testament studies. (Doc. 54-2.) But the job description simply states that a "robust research and publication agenda" was desirable. Dr. Tolley more than meets that requirement. (Doc. 63-1 Ex. 5.)

Similarly, there was no stated requirement that Dr. Tolley's Ph.D. come from a theological institute. The job posting required that candidates have a PhD in New Testament, Biblical Studies, or a related field. Dr. Tolley possesses such a degree. (Doc. 63-1 Ex. 5.) He holds a PhD in Religious Studies from the University of Pennsylvania with his primary field of specialization being Christian Origin/New

28

Testament. (*Id.*) But Mercer designated Dr. Tolley as "Qualified-Less Relevant Education/Degree." (Doc. 54-4 ⁋ 18.) Given Dr. Tolley's New Testament degree specialization, this designation is unsustainable. Dr. Parker, in contrast, does not have such a degree. (Doc. 54-8 Ex. 18 at MU279.)

Dr. Parker holds a Ph.D. in Bible, Culture, and Hermeneutics. (Doc. 54-8, Ex. 18 at MU279.) Before Dr. Walford reviewed Parker's application, she was not even familiar with anyone having a Ph.D. in Bible, Culture, and Hermeneutics.[10] (Doc. 54-8 at 80:24–81:2.) Further, two student representatives who gave input to the search committee did not rank Dr. Parker as their first selection and expressed concerns about the narrowness of her academic focus. (Doc. 74-3 at MU2165, 2313.) And Walford and Massey did not vote for Parker as their top pick. (Doc. 54-8 at 65:7–12; Doc. 54-7 at 66:20–22.)[11]

In deciding summary judgment, the trial court is to make findings based on the record as a whole, as opposed to isolated testimony or evidence and must also

---

[10] Where, as here, the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext. *Vessels v. Atlanta Independent Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005).

[11] That Mercer may have allowed certain other white individuals to progress farther in the process (although still ultimately rejecting them) than Dr. Tolley is not relevant to the issue of what happened to Dr. Tolley as an individual. Title VII requires "a focus on fairness to individuals rather than classes" and that focus is "unambiguous." *City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 711–12 (1978); *see also Connecticut v. Teal*, 457 U.S. 440, 455 (1982).

draw factual inferences in the light most favorable to the nonmovant. *See Hulsey,*
*LLC*, 367 F.3d at 1243; *Celotex Corp.*, 477 U.S. at 322–23. Under this standard, Dr.
Tolley raised triable fact issues that Mercer's hiring process was impermissibly
infected with racial considerations. The District Court failed to even address the
issue of pretext, let alone consider the issue based on the record as a whole. This
Court should reverse the District Court and remand this case for trial.

### C.    THE DISTRICT COURT ERRED IN FAILING TO FIND THAT DR. TOLLEY RAISED TRIABLE FACTS UNDER THE CONVINCING MOSAIC STANDARD

The District Court did not address Dr. Tolley's arguments concerning the
"convincing mosaic" standard based on its erroneous determination that the search
committee members did not know Dr. Tolley's race at the time they eliminated him
from the search process. (Doc. 85 at 5.) Dr. Tolley raised, however, triable issues of
fact on this issue.

"[E]stablishing the elements of the *McDonnell Douglas* framework is not, and
never was intended to be, the *sine qua non* for a plaintiff to survive a summary
judgment motion in an employment discrimination case." *Smith*, 644 F.3d at 1328.
"Rather, the plaintiff will always survive summary judgment if he presents
circumstantial evidence that creates a triable issue concerning the employer's
discriminatory intent." *Id*. "A triable issue of fact exists if the record, viewed in a
light most favorable to the plaintiff, presents a convincing mosaic of circumstantial

evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. (internal quotation marks and footnote omitted). Although Dr. Tolley established a prima facie case, he also established triable issues of fact under this standard.

A plaintiff may establish a "convincing mosaic" "'by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements …, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, at 1185 (2019) (*quoting Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011) (noting that behavior indicative of discriminatory animus may also include "behavior toward or comments directed at other employees in the protected group"). *Jenkins*, 26 F.4th at 1251 (11th Cir. 2022) (holding in part that plaintiff established a convincing mosaic of circumstantial evidence that revolved around credibility findings).

Dr. Tolley presented evidence establishing a convincing mosaic to allow a jury to infer discrimination. As set forth in Section III.A, *supra*, Dr. Tolley presented evidence that the search committee discussed race with respect to the suitability of candidates, and that a committee member, Dean Deloach, and faculty members made specific comments directed to race and suitability, including a comment from Dr.

31

deClaisse-Walford stating, in effect, that an otherwise qualified candidate was a white male and therefore not desirable.  And as set forth in Section III.B, *supra*, Dr. Tolley established triable issues of fact on pretext which evidence also supports a triable issue of fact under a convincing mosaic analysis. The District Court erred in failing to consider this issue and failing to find that Dr. Tolley raised triable issues of fact under the convincing mosaic standard.

### D.  THE DISTRICT COURT ERRED IN FAILING TO FIND THAT DR. TOLLEY RAISED TRIABLE FACTS UNDER A MIXED-MOTIVE STANDARD

The District Court did not address Dr. Tolley's arguments concerning the mixed-motive standard based on its erroneous determination that the search committee members did not know Dr. Tolley's race at the time they eliminated him from the search process. (Doc. 85 at 5.) Dr. Tolley raised, however, triable issues of fact on this issue.

Mixed-motive claims differ from single-motive discrimination claims. *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x. 529, 540–51 (11th Cir. 2019). "The *McDonnell Douglas* framework 'is inappropriate for evaluating mixed-motive claims,' and instead, the plaintiff need only show that the (1) employer made an adverse employment decision against [him], and (2) a protected characteristic was a motivating factor for that decision." *Id*. (*quoting Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1237–39 (11th Cir. 2016)).

32

Dr. Tolley raised triable issues of fact under a single-motive standard. But even assuming, for purposes of argument, that he did not, he raised triable issues of fact under a mixed-motive standard. He was subjected to an adverse action (not hired) and raised triable issues of fact concerning the search committee's awareness of his race and the race-based remarks and motivations of the committee and Dean Deloach. A reasonable jury could conclude that Dr. Tolley's race was a motivating factor in Mercer's employment decision. Should this Court find Dr. Tolley failed to meet the single-motive standard, Dr. Tolley respectfully requests that the Court reverse the District Court because he established triable issues of fact under the mixed-motive standard.

## VI.    CONCLUSION

"Discrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim." *Bass*, 256 F.3d 1095, 1102–03, *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). Dr. Tolley has established genuine issues of material fact that must be presented to a jury. Where, as here, the evidence is conflicting, the District Court should have construed all the evidence, drawn all reasonable inferences, and resolved all doubts about the facts in favor of Dr. Tolley, the non-moving party. *Kingsland*, 382 F.3d at 1225–26. This is so because "[s]ummary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, [that] caution must be used to ensure only those cases devoid

of any need for factual determinations are disposed of by summary judgment."

*Tippens v. Celotex Corp.*, 805 F.2d 949, 952–53 (11th Cir. 1986). The District Court

erred in refusing to recognize the genuine issues of material fact in this case, and its

decision must therefore be reversed and Dr. Tolley be allowed to present his claims

to a jury.

Respectfully submitted this 23rd day of February, 2023,

**BUCKLEY BALA WILSON MEW LLP**

/s/ Thomas J. Mew
Thomas J. Mew
Georgia Bar No. 503447
tmew@bbwmlaw.com
J. Kyle Brooks
Georgia Bar No. 773561
kbrooks@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). Excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this brief contains 7,924 words. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

**BUCKLEY BALA WILSON MEW LLP**

/s/Thomas J. Mew
Georgia Bar No. 503447
tmew@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

## **CERTIFICATE OF SERVICE**

This is to certify that I have this 23rd day of February, 2023 filed the foregoing

served a copy of the **Initial Brief of Appellant Harry W. Tolley, Jr.** with the Clerk

of the Court using the CM/ECF system, which will automatically send e-mail

notification of such filing too the following attorneys of record:

Callie D. Bryan
Canon B. Hill
William Brian McDavid, Jr.

This same date, I have delivered four paper copies of the foregoing **Initial**

**Brief of Appellant Harry W. Tolley, Jr.** to the clerk via third party commercial

carrier.

**BUCKLEY BALA WILSON MEW LLP**

/s/ Thomas J. Mew
Georgia Bar No. 503447
tmew@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Appellant*