**NO. 22-13283-A**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

HARRY W. TOLLEY, JR.,

Appellant,

v.

MERCER UNIVERSITY,

Appellee.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN OF GEORGIA
ATLANTA DIVISION
CASE NO. 1:20-cv-02453-VMC

# REPLY BRIEF OF APPELLANT HARRY W. TOLLEY, JR.

**Thomas J. Mew
Georgia Bar No. 503447
J. Kyle Brooks
Georgia Bar No. 773561
BUCKLEY BALA WILSON MEW LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
(404) 781-1100**

**Counsel for Appellant Harry W. Tolley, Jr.**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1, the undersigned counsel of record verifies that those persons or entities listed below have or may have an interest in the outcome of this case:

Brooks, J. Kyle – counsel for Appellant

Bryan, Callie D. - counsel for Appellee

Buckley Bala Wilson Mew LLP – counsel for Appellant

Calvert, Victoria Marie – Judge, United States District Court

Cannon, Regina D. – Magistrate Judge, United States District Court

Hill, Canon B. – counsel for Appellee

Jones Cork, LLP – counsel for Appellee

McDavid, Jr., William B. – counsel for Appellee

Mercer University – Appellee/Defendant

Mew, Thomas J. – counsel for Appellant

Tolley, Harry W. – Appellant/Plaintiff

United Educators Insurance Company – insurer for Appellee

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....... C-1

TABLE OF CONTENTS ....... i

TABLE OF CITATIONS ....... ii

I. ARGUMENT AND CITATION OF AUTHORITIES ....... 1

A. DR. TOLLEY RAISED TRIABLE ISSUES OF FACT CONCERNING THE SEARCH COMMITTEE'S KNOWLEDGE OF HIS RACE ....... 1

B. DR. TOLLEY RAISED TRIABLE ISSUES OF MATERIAL FACT CONCERNING PRETEXT ....... 5

C. MERCER WAIVED THE MINISTERIAL EXCEPTION DEFENSE BY FAILING TO TIMELY RAISE IT AND HAS NOT MET ITS BURDEN TO PROVE THAT THE EXCEPTION IS APPLICABLE TO THIS CASE. ....... 7

II. CONCLUSION ....... 12

CERTIFICATE OF COMPLIANCE ....... 14

CERTIFICATE OF SERVICE ....... 15

## TABLE OF CITATIONS

Page

**Cases**

*Belya v. Kapral, 45 F.4th 621, 633 (2nd Cir. 2022)* ) ........................................... 10

*Berbridge v. Sam's E., Inc.*, 728 F. App'x 929 (11th Cir. 2018)........................... 3, 4

*Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002). ....................................................................................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 3

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005). .................................... 1

*Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316 (11th Cir. 2012)........... 9

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, (2012) ............................................................................................... 8

*Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238 (11th Cir. 2004) ......................... 3

*Leaphart v. Am. Friend Service Comm.*, 2008 WL 4682626 (E.D. Pa. Oct. 22, 2008). ..................................................................................................... 10

*Moore v. Morgan*, 922 F.2d 1553 (11th Cir. 1991) ............................................. 8, 9

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 207 L. Ed. 2d 870 (2020) ......................................................................................................... 11

*Petruska v. Gannon Univ.*, 462 F.3d 294 (3rd Cir. 2006) .................................. 8, 10

*Petschonek v. Catholic Diocese of Memphis*, 2012 WL 1868212 (Tenn. Ct. App. 2012). ..................................................................................................... 10

*Ratliff v. Wycliff Associates, Inc.*, 2023 WL 3688082 (M.D. Fla. May 26, 2023).. 11

*Ross v. Metropolitan Church of God*, 471 F.Supp.2d 1306 (N.D. Ga. Jan. 23, 2007). ..................................................................................................... 11

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 20112011) .................. 5

*Tucker v. Faith Bible Chapel Int'l*, 2022 WL 2035804 (10th Cir. June 7, 2022)... 10

*U.S. v. Durham*, 795 F.3d 1329, 1330-31 (11th Cir. 2015).....................................9

# I. ARGUMENT AND CITATION OF AUTHORITIES

## A. DR. TOLLEY RAISED TRIABLE ISSUES OF FACT CONCERNING THE SEARCH COMMITTEE'S KNOWLEDGE OF HIS RACE

Mercer argues that Dr. Tolley's evidence concerning the Search Committee's knowledge of his race is unduly speculative. But Dr. Tolley presented evidence beyond mere speculation concerning Dr. Garber's knowledge of his race. Based on Dr. Allen's testimony, it is a reasonable inference that Dr. Allen, a white male, told Dr. Garber of his familial relationship to Dr. Tolley and that Dr. Garber would conclude from this statement that Dr. Tolley is also white.[1]

Mercer cites *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005. *Cordoba*, however, is distinguishable because in that case, the plaintiff's own affidavit stated that the defendant told her she could not work for defendant before the plaintiff informed defendant about her heart condition. *Id.* Here, Dr. Tolley has presented evidence regarding Dr. Allen's assumption about Dr. Tolley's race and communication with Dr. Garber.

---

[1] Defendant mischaracterizes Dr. Tolley's argument on this issue as "based on a crude assumption that people only marry people of the same race or are only related to people of the same race." (Appellee's Br. at 17, n.2. (11th Cir. doc. No. 24).) This is not only wrong, to the extent Defendant is suggesting Dr. Tolley harbors such beliefs, it is inappropriately pejorative. The evidence of record is that when Dr. Allen first spoke with his relative Dr. Tolley by telephone, Dr. Allen stated that he assumed that Dr. Tolley was a white male. (Doc. 54-5, 70:19–22; 71:1–6; Doc. 63-1, Ex. 8.)

Although the Search Committee members testified that they did not know Dr. Tolley's race, Dr. Tolley presented evidence to raise a triable issue of fact on this point and a credibility determination that must be made by a jury. In addition to the evidence concerning Dr. Allen, Dr. Tolley presented evidence concerning discussions of race by and among the committee members which further supports the inference that Dr. Garber shared his knowledge or belief concerning Dr. Tolley's race with the other search committee members. This evidence includes:

- The search committee discussed that the accrediting agency reminded them to pay attention to racial and gender diversity and that Dr. Parker would provide this. (Doc. 54-7, 68:24–69:5.)
- In a November 1, 2018 email, committee member Dr. deClaisse-Walford stated of a candidate that she had seen his application and liked him very much but "he is a white male…sigh!" (Doc. 74-3, Ex1. at MU1857.)
- Dean DeLoach responded to an email from a faculty member by stating in part "we are searching to fill a NT faculty position…all things being equal a person of color would be preferred." (*Id.* at MU2313.)
- In the same email, DeLoach stated that of the remaining applicants, only one was African American and that although "the committee has her at the top of our list, out [sic] two student reps (one Hispanic and one African-American) did not have her at the top of the list. Further complicating this is that we

have had two student 'petitions' to hire [white male] Chris Holmes with several African-American students signing the petition." (*Id.*)

- Dr. Massey testified that the race of a candidate had bearing as to qualification for the job. (Doc. 54-7 at 25:23 – 26:6.)

Moreover, Dr. Tolley presented evidence that the issue of candidate's race was a topic of discussion among the faculty. Dean DeLoach's notes from faculty discussions of the candidates contain numerous references to the final candidates' race. (Doc. 74-3 Ex. 1 at MU804–06.) In discussing Dr. Parker, Dr. Allen specifically mentioned that she was African American. (*Id.* at MU804.) Dr. Allen further stated that Dr. Parker's "race is a plus." (*Id.*) With respect to Dr. Holmes, Allen stated that he was "embodiment of white may be problematic." (*Id.* at MU805.) Another faculty member stated in discussing Dr. Holmes "need more diversity." (*Id.*) *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1243 (11th Cir. 2004); *Celotex Corp. v. Catrett*, 477 U.S. 317, at 322–23 (1986) (in deciding summary judgment, the court is to make findings based on the record as a whole, as opposed to isolated testimony or evidence and must also draw factual inferences in the light most favorable to the nonmovant.) *Cf. Berbridge v. Sam's E., Inc.*, 728 F. App'x 929 at 933 (11th Cir. 2018) (comparing slip and fall cases on summary judgment, stating that the common issue of notice in both cases could not "be viewed in isolation from the surrounding circumstances" and distinguishing

the case at hand from the other cited case because there was "no similar evidence of the surrounding circumstances that could support an inference" on the disputed legal issue).[2]

Mercer argues that there is a "chronological" issue based on the timing of Dr. Tolley's conversation with Dr. Allen, Dr. Allen's conversation with Dr . Garber, and when the committee decided not to interview Dr. Tolley. But Defendant admits that the record does not contain the precise dates for the 2018 Society of Biblical Literature meeting (doc. 24 at 20) and so the evidence at most "*indicates* the Search Committee *likely* reviewed Tolley's application and chose not to interview him well before Allen spoke to Garber." (*Id*. at 21.) Thus, there is at the least an issue of fact on timing that must be decided by a jury.

Based on this evidence of record, it is a reasonable inference, which the Court must draw in Dr. Tolley's favor, that Dr. Garber's belief that Dr. Tolley was white was shared with the other Committee members and that the members had knowledge of or belief concerning Dr. Tolley's race as white. This Court should reverse the District Court's order.

---

[2] As stated in his initial brief, Dr. Tolley is not arguing constructive knowledge in this discrimination case but rather cites to *Berbridge* as an example of when surrounding circumstances may further support a factual inference being drawn in favor of the non-movant.

### B. DR. TOLLEY RAISED TRIABLE ISSUES OF MATERIAL FACT CONCERNING PRETEXT

As established in Dr. Tolley's initial brief, there is abundant evidence of pretext in this case. First, the race based discussions and circumstances cited in Section I.A, *supra*, are evidence of pretext and raise triable issues of fact concerning Mercer's discriminatory animus. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1346 (11th Cir. 2011) (when an employer injects race into its decision-making process, it "yields an unavoidable inference that the employee's race impacted the [employment decision], and it is a jury's province to decide whether race actually bore on the [employment decision]")

Dr. Tolley also at least raised triable issues of fact that Mercer deviated from its regular procedures during the hiring process through evidence demonstrating that the application materials the search committee members reviewed, including the application of Dr. Parker (who was ultimately hired), contain numerous references to the applicants' demographic information, even in their redacted form such as "a racial/ethnic minority," "my contextual location as a Euro American" and self-identification as "white." (*Id*. at MU353, 356.) And Dr. Parker's application materials provided to the search committee, state that she is "aware of my visible difference in predominantly white institutions." (*Id.* at MU275.)

In response, Mercer argues that Mercer's HR department cannot be faulted "for not combing through candidates' application documents and meticulously scrubbing every possible clue as to an applicant's race or gender." (Doc. 24 at 24.) First, this argument ignores the fact that Mercer has argued demographic data is not passed along to the search committee. (Aff. of Candace Whaley ⁋⁋ 11, 19-20, Doc. 54-4 (stating in part that "All completed faculty applications are sent to the Search Committee . . . without any demographic information included." ) Here, it clearly was. Second, the references contained in the cited materials are far more direct than simply "clues" as to a candidate's race or other demographic information. The prevalence of such demographic information in the application process and before the search committee raises issues of pretext with respect to Mercer's claims of a neutral and unbiased search process.

Mercer also mischaracterizes Dr. Tolley's pretext arguments concerning Mercer's after the fact reasons for allegedly not selecting him. Dr. Tolley is not simply arguing that he was qualified. Mercer has alleged reasons for not hiring Dr. Tolley that are inconsistent with its internal documentation which stated that Mercer designated Dr. Tolley as "Qualified -Less Relevant Education/Degree." (Doc. 54-4 ⁋ 18.) In the first place, given Dr. Tolley's New Testament degree specialization, this designation makes no sense. Dr. Parker, in contrast, does not have such a degree. (Doc. 54-8 Ex. 18 at MU279.) Mercer insists in its response

brief that Dr. Tolley's church connections or experience were another factor in the decision not to hire him. But it did not designate that as an issue in its internal documentation. (Doc. 54-4, Whaley Aff. ⁋ 15) (stating that there are 35 indicators available for disposition, including "qualified-less relevant experience[.]") Finally, as Dr. Tolley discussed in his initial brief, Dr. Tolley presented evidence that members of the search committee destroyed their notes concerning the candidate search process, in violation of Mercer's document retention policy, which deviation raises further issues of pretext.

The District Court failed to even address the issue of pretext, let alone consider the issue based on the record as a whole. This Court should reverse the District Court and remand this case for trial.[3]

### C. MERCER WAIVED THE MINISTERIAL EXCEPTION DEFENSE BY FAILING TO TIMELY RAISE IT AND HAS NOT MET ITS BURDEN TO PROVE THAT THE EXCEPTION IS APPLICABLE TO THIS CASE.

As an initial matter, Mercer has waived this defense. Not only did Mercer fail to raise the "ministerial exception" argument until it filed its reply brief in support of its motion for summary judgment (Doc 75.); it also failed to raise the defense in its answer. (Doc. 1.) Despite asserting fourteen affirmative defenses in

[3] Dr. Tolley believes the issues of the convincing mosaic standard and mixed motives standard were fully addressed in his initial brief and thus does not specifically address them in this reply.

its answer, Mercer did not include this defense. (*Id*., pp. 1-4.) Moreover, Mercer never filed an amended answer raising the defense and never raised the defense in any motion or other filing made in this case prior to its summary judgment reply brief. As a result, Mercer has waived this defense.[4]

The ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012). Two of the cases treating the ministerial exception as an affirmative defense, which the *Hosana-Tabor* Court cited with approval, describe the defense as similar to a government official's defense of qualified immunity, which is, of course, subject to waiver. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3rd Cir. 2006)("the ministerial exception … is akin to a government official's defense of qualified immunity"); *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 654 (10th Cir. 2002)(same); *Moore v. Morgan*, 922 F.2d 1553, 1557 (11th Cir. 1991)("[q]ualified immunity is an affirmative defense to personal liability that the

[4] Dr. Tolley raised the issue of waiver and moved to have the argument disregarded or submit a sur-reply brief on this issue, (doc. 70) which the District Court granted in part with respect to the sur-reply issue. (Doc. 73). The District Court did not address the ministerial exception in its summary judgment order. (Doc. 78 at 14, n.9 (Report and Recommendation); Doc. 85 (Order adopting Report and Recommendation).)

defendant has the burden of pleading. … The failure to plead qualified immunity may result in a waiver of the defense.") (internal citations omitted).

This Court, in a different procedural posture, found that the ministerial exception defense, like other affirmative defenses *is* subject to waiver. *See Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012), *overruled, on other grounds*, by *U.S. v. Durham*, 795 F.3d 1329, 1330-31 (11th Cir. 2015).. In *Hamilton*, at summary judgment in the district court, the defendant raised the ministerial exception affirmative defense and also argued for summary judgment on the merits. *Id*. at 1318. The district court found that the ministerial exception did not apply but granted summary judgment to the defendant on the merits, and the plaintiff appealed. *Id*. On appeal, the defendant did not raise the ministerial exception defense as an alternative basis for affirming the district court's judgment. *Id*. The defendant-appellee later tried to untimely raise the ministerial exception defense, through an improper supplemental filing, but the Eleventh Circuit refused to consider the defense and found that the defense was waived by the defendant's failure to timely raise the issue on appeal. *Id*. at 1318. Although *Hamilton* specifically addressed waiver at the appellate, rather than trial court, level, it shows that even where a party has preserved the defense below, it is still subject to waiver on appeal. Of course, Mercer did not even preserve the affirmative defense at the District Court level and thus has waived it.

Courts in other jurisdictions have reached the same conclusion. *See, e.g.*, *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1027, 1028-29, & 1036-38 (10th Cir. 2022) (the ministerial exception is not a jurisdictional bar but operates as an affirmative defense); *Belya v. Kapral*, 45 F.4th 621, 633 (2nd Cir. 2022) ("The church autonomy doctrine provides religious associations neither an immunity from discovery nor an immunity from trial on secular matters. Instead, as the Seventh Circuit also recognized, the First Amendment serves more as 'an ordinary defense to liability.' … Other examples also suggest that the church autonomy doctrine is aa defense and not a jurisdictional bar from suit.") (collecting cases; citations omitted);; *Leaphart v. Am. Friend Service Comm.*, 2008 WL 4682626, *2 (E.D. Pa. Oct. 22, 2008) (stating that the ministerial exception "is an affirmative defense, which must be asserted in a party's responsive pleading" and finding a defendant who did not plead the defense and, instead, raised it for the first time in its summary judgment motion had waived the defense)(*citing Petruska*, 462 F.3d at 302, 304, 305 n.8; Fed. R. Civ. P. 8(c)); *Petschonek v. Catholic Diocese of Memphis*, 2012 WL 1868212, *6 (Tenn. Ct. App. 2012). Accordingly, Mercer has waived this defense.

Even if this Court were to determine that Mercer has not waived this affirmative defense, Mercer has completely failed to carry its burden of establishing it. "The application of the ministerial exemption requires a fact-

specific inquiry and a determination of the functions of a[n] … employee." *Ross v. Metropolitan Church of God*, 471 F.Supp.2d 1306, 1311 (N.D. Ga. Jan. 23, 2007). The ministerial exception is focused on whether the individual in the job at issue is operating in a ministerial capacity. Thus, whether an individual may or may not be involved in some manner or another in preparing students to pursue a career in ministry, should they elect to do so, is not dispositive of the nature of the institution and whether the position entails a ministerial function in terms of teaching doctrine or as otherwise spelled out in the parameters of the ministerial exception defense. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2066, 207 L. Ed. 2d 870 (2020) (noting that the employees at issue in that case "both performed vital religious duties" and that "educating and forming students in the Catholic faith lay at the core of the mission of the schools where they taught, and their employment agreements and faculty handbooks specified in no uncertain terms that they were expected to help the schools carry out this mission and that their work would be evaluated to ensure that they were fulfilling that responsibility"); *Ratliff v. Wycliff Associates, Inc.*, 2023 WL 3688082 at *3-6 (M.D. Fla. May 26, 2023) (detailing the many factors that must be evaluated in considering whether the ministerial exception defense applies).

In other words, the ministerial exception defense relates to not only the nature of the institution but more specifically the nature of the position and what

that position is intended to do. One could instruct in New Testament studies without necessarily instructing on doctrinal points related to a particular point of view. Similarly, a course in public speaking would perhaps be quite valuable in preparing an individual for a career in ministry, but it would have nothing to do with teaching doctrine from one religious sect or another or the related issues attendant to the ministerial exception. This is the distinction that matters for purposes of the defense, along with the foundation and nature of the educational institution itself. And Mercer has failed to carry its burden on this issue.[5]

## II. CONCLUSION

For the reasons set forth herein and in his initial brief, Dr. Tolley respectfully requests that this Court reverse the District Court's grant of summary judgment to Mercer.

Respectfully submitted this 14th day of June, 2023,

---

[5] As Dr. Tolley noted to the District Court, were Mercer permitted to raise this affirmative defense at the summary judgment stage, additional discovery would be required on any number of issues not in the record, the manner in which Defendant's relevant professors are regarded by the university, their day-to-day duties vis-à-vis the university and its students, and the terms of employment agreements or university policies to which they may be subject with respect to religion. (Doc. 70-1 at 11.)

**BUCKLEY BALA WILSON MEW LLP**

/s/ Thomas J. Mew
Thomas J. Mew
Georgia Bar No. 503447
tmew@bbwmlaw.com
J. Kyle Brooks
Georgia Bar No. 773561
kbrooks@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). Excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this brief contains 2901 words. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

**BUCKLEY BALA WILSON MEW LLP**

/s/Thomas J. Mew
Georgia Bar No. 503447
tmew@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

## CERTIFICATE OF SERVICE

This is to certify that I have this 14th day of June, 2023 filed the foregoing served a copy of the **Reply Brief of Appellant Harry W. Tolley, Jr.** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing too the following attorneys of record:

Callie D. Bryan
Canon B. Hill
William Brian McDavid, Jr.

This same date, I have delivered four paper copies of the foregoing **Reply Brief of Appellant Harry W. Tolley, Jr.** to the clerk via third party commercial carrier.

**BUCKLEY BALA WILSON MEW LLP**

/s/ Thomas J. Mew
Georgia Bar No. 503447
tmew@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
*Counsel for Appellant*